**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CORY LANCELIN SMITH,<br><br>                    Petitioner,<br>   vs.<br><br>A. HEDGPETH, Warden, et al.,<br><br>                    Respondent. | CASE NO. 07-CV-1339 H (PCL)<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION AND GRATING MOTION TO DISMISS AMENDED PETITION FOR WRIT OF HABEAS CORPUS** |

On July 23, 2007, Cory Lancelin Smith ("Petitioner"), a state prisoner proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) On July 31, 2007, Petitioner filed an amended petition for writ of habeas corpus. (Doc. No. 5.) On June 6, 2008, Respondent filed a motion to dismiss the amended petition. (Doc. No. 25.) On July 09, 2008, the magistrate judge filed a Report and Recommendation, recommending that this Court grant Respondent's motion to dismiss. (Doc. No. 30.) Petitioner filed objections to the Report and Recommendation on February 10, 2009. (Doc. No. 34.)

For the reasons set forth below, the Court ADOPTS the Report and Recommendation and GRANTS the motion to dismiss.

///

///

## Background

**A.   Factual History**

The state appellate court summarized the relevant facts as follows:

> In March 2003, 19-year-old prostitute Crystal Davis met Smith outside a nightclub in Mission Valley and later registered for a room at a nearby Howard Johnson's Hotel, where she stayed with Smith for nine days. Smith told Davis that he was a pimp and Davis agreed to work for him. Smith took photographs of Davis and another prostitute, Stephanie Smith (referred to herein as Stephanie), and posted the pictures on an Internet website called "San Diego Exotics." Smith told Davis what to charge for specific services, explained how to recognize an undercover officer and promised to bail Davis out of jail if she was arrested. Smith, who is Black, instructed Davis that she was not to talk to other Black men because he was concerned that she might start working for a different pimp; he also took away her identification.
>
> On March 24, Smith, Davis, Stephanie and another man went to Anaheim, where the women worked as prostitutes out of a motel for about four days. Smith paid for the motel room and gave Davis the clothes she wore while she was working. Contrary to Smith's earlier assurances, he kept all of Davis's earnings.
>
> On March 28, the foursome left Anaheim for Las Vegas, where Smith got each of the women a room and the women continued to prostitute themselves. Smith required Davis to give him all of her earnings, although he paid for her food and clothing and bought her a cell phone, the number for which accompanied her picture on the website. During their stay in Las Vegas, Smith made comments to Davis suggesting that he might hit her and one night Davis heard sounds coming from Stephanie's room suggesting that Smith was hitting Stephanie. On April 13, the group returned to San Diego and Davis quit working for Smith and gave the cell phone back to him.

In May, the San Diego Police Department investigated Smith after discovering suspicious items (including a motel key, several cell phones, Davis's identification, as well as identifications for Stephanie and another woman, and a backpack containing women's lingerie) in his car during an impound search incident to a traffic stop and arrest. As part of the investigation, detectives contacted Davis, who told them about her work for Smith. They also discovered that the cell phone Smith had purchased for Davis, which had the contact number listed for her on the San Diego Exotics website, received 698 phone calls for the month of April.

On October 3, prostitute Janice Perry called 911; when police arrived at her room at the Motel 6 in Mission Valley, Perry reported that Smith, who was her pimp, had beaten her up and taken $400 from her purse. Perry told officers that Smith went to Stephanie's room at the nearby Days Inn Motel; the officers went to the motel, found Smith and questioned him; they found $400, in the same denominations Perry reported Smith to have taken, in one of Smith's pockets. After Perry identified Smith as her assailant, the officers arrested him. Smith was ultimately charged with two counts of felony pimping and one count of robbery. He thereafter posted bail and was released.

At trial in January 2004, the prosecution introduced evidence of the foregoing, although Perry recanted her accusations against Smith, saying that she had made the false accusations out of jealousy arising from her belief that he was sleeping with another prostitute. Smith failed to appear in court on the day the verdict was announced; the jury convicted him of the pimping counts, but acquitted him of the robbery.

In May 2004, the district attorney charged Smith with wilfully failing to appear while on bail. Smith was apprehended in March 2005 and the following month he waived his right to a jury trial on the failure to appear charge and the enhancement allegations in both cases. The court found Smith guilty on the

1
2
3
4

        charge and that he had suffered one prior prison term, two prior serious felony convictions and five prior strike convictions. It sentenced Smith to 50 years to life, plus one year, on the pimping counts and a consecutive 5-year term on the failure to appear count.

5 (Lodgment 8 at 2-4.)

6 **B.    Procedural History**

7         The procedural history is accurately detailed in the Report and Recommendation.
8 The current petition contains both exhausted and unexhausted claims. Petitioner has not
9 presented the unexhausted claims to a state court.

10         **Discussion**

11         The exhaustion requirement is satisfied by providing the state courts with a "fair
12 opportunity" to rule on Petitioner's claims. Anderson v. Harless, 459 U.S. 4, 6 (1982). In
13 most instances, a claim is exhausted once it is presented to a state's highest court, either on
14 direct appeal or through state collateral proceedings. See Sandgathe v. Maass, 314 F.3d
15 371, 376 (9th Cir. 2002). The constitutional claim raised in the federal proceedings must
16 be the *same* as that raised in the state proceedings. See Anderson, 459 U.S. at 6. The
17 burden of pleading that a claim has been exhausted lies with the petitioner. Cartwright v.
18 Cupp, 650 F.2d 1103, 1104 (9th Cir. 1981).

19         The current petition is identical to the petition filed in this Court on July 23, 2007.
20 Despite this Court's previous instructions on exhaustion in the July 31, 2007 order,
21 Petitioner failed to present his unexhausted claims to a state court. The petition is therefore
22 a mixed petition, containing exhausted and unexhausted claims. Petitioner is not entitled to
23 a stay, and the Court dismisses the petition without prejudice.

24 ///
25 ///
26 ///
27 ///
28 ///

**Conclusion**

For the reasons stated above, the Court ADOPTS the Report and Recommendation and GRANTS WITHOUT PREJUDICE Respondent's motion to dismiss amended petition for writ of habeas corpus. The case is terminated. The Court also denies a certificate of appealability.

IT IS SO ORDERED.
DATED: February 12, 2009

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

COPIES TO:
All parties of record.